**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JULIO CESAR SANTIAGO-RODRIGUEZ,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 06-75319

Agency No.
A073-819-676

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 8, 2010—Pasadena, California

Filed September 9, 2011

Before: Betty B. Fletcher, Marsha S. Berzon, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Callahan

17139

## COUNSEL

Michael Friedberg and Mathew Ho, Friedberg & Trombi, Los Angeles, California, and Thomas N. Saldin, the Law Offices of Saldin & Friedberg, Los Angeles, California, for petitioner Julio Cesar Santiago-Rodriguez.

James Arthur Hunolt, Andrew B. Insenga, and Rebecca Hoffberg Phillips, the Office of Immigration Litigation of the Civil Division of the Department of Justice, Washington, DC, for respondent Eric H. Holder Jr.

## OPINION

BERZON, Circuit Judge:

This case requires us to decide whether an alien in removal proceedings can withdraw his former attorney's admission of the Government's factual allegations when the propriety of the admission has been severely undercut by subsequent legal developments that may, in fact, mean that the admission was false.

## FACTUAL AND PROCEDURAL HISTORY[1]

---

[1]The facts recited here are those to which Santiago testified. As neither the Immigration Judge nor the Board of Immigration Appeals made an adverse credibility finding, we must accept Santiago's testimony as true for present purposes. *See, e.g.*, *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

Julio Cesar Santiago-Rodriguez ("Santiago"), a native and citizen of Mexico, lawfully entered the United States in 1991 and became a lawful permanent resident ("LPR") in June 1999. In December 1999, Santiago returned to Mexico to marry his fiancée Maria Maravilla Romero ("Maravilla"); they wed on December 21, 1999 in Villamar, Mexico. Following the wedding, Santiago and Maravilla traveled to Chiapas to spend time with Santiago's family.

At some point, Maravilla told Santiago that she would like to accompany him back to the United States—that is, to enter illegally. While the couple was in Chiapas, Santiago's brother, Luis, told Santiago the same thing. Santiago attempted to discourage both from entering the United States illegally, but to no avail. Accordingly, on or about January 6, 2000, Santiago, Maravilla, and Luis flew from Chiapas to Juárez, Mexico, which abuts El Paso, Texas. Santiago purchased the airline tickets from Chiapas to Juárez for Maravilla and himself, while Luis purchased his own ticket with money he borrowed from his aunt. While in Juárez, Santiago purchased a counterfeit I-551 (typically called a "green card") for Maravilla, and Luis purchased one for himself.

The following day, Santiago walked across the U.S.-Mexico border and proceeded to the offices of a travel agent in El Paso to meet up with his wife and brother, who had crossed the border with the aid of one or more *coyotes* (smugglers). Santiago testified that he did not pay the *coyote(s)*, suggesting instead that Luis had done so. At the travel agency, Maravilla and Luis each purchased a ticket to fly to Los Angeles later that day. The record is unclear as to who purchased Maravilla's ticket, but Luis purchased his own.

The three then proceeded to the El Paso airport. According to Santiago, two Border Patrol agents in cowboy hats approached him as he was looking at the TV monitors displaying gate information in the airport lobby.[2] After asking

---

[2]In contrast, the form I-213 completed by one of the Border Patrol agents states that Santiago approached the agents to ask for help locating

Santiago where he was going, one of the agents demanded Santiago produce his "papers" to "show you're not illegal." Santiago produced his I-551, but was detained in the airport terminal for approximately 20-30 minutes while his brother and wife were separately questioned out of his earshot.

Thereafter, all three were handcuffed and led into a small room, where they were advised of their *Miranda* rights, and their bags were searched. During the bag search, the agents found documents establishing that Maravilla and Luis's I-551s were fake. Santiago stated that he had an attorney in Los Angeles, but was told that he could not talk to a lawyer until he had a hearing in immigration court. Santiago also was asked several questions about whether he had smuggled his brother and/or wife into the country. Santiago testified before the immigration judge (IJ) that he had a difficult time understanding the agent interrogating him, who spoke Spanish only haltingly. The record contains a document (a form I-215B) that purports to memorialize the interrogation, but the IJ disregarded it because she had concerns, including its lack of a certificate of translation, affecting its reliability.[3]

Following the interview, Santiago was issued a Notice to Appear (NTA). The NTA alleged that Santiago had "know-

a particular gate and was then questioned about his immigration status. The I-213 stated that Santiago was interrogated about his status because of his "confusion, nervousness, manner of dress[—]which was similar to other undocumented aliens encountered at the airport[—]and [the] actions of [Maravilla and Luis]," both of whom "maintained a safe distance" from the agents as Santiago asked for help.

[3]The I-215B states that Santiago admitted to smuggling in both his wife and his brother, but Santiago testified before the IJ that he told the agent that he had helped only his wife enter the country. Santiago admitted signing the I-215B (which is in English), but says that it was never read to him in Spanish and that he only signed it after the agent told him that the form was just for "the judge" to decide whether he is guilty, presumably of smuggling.

ingly encouraged, induced, assisted, abetted, or aided" his wife and brother to enter the United States illegally, and accordingly charged him with being removable under 8 U.S.C. § 1227(a)(1)(A)[4] and (a)(1)(E)(i).[5] Pursuant to 8 U.S.C. § 1226, an Immigration and Naturalization Service (INS) agent[6] set Santiago's bond at $5,000 later that day.

Within seven to ten days after his arrest at the airport, and while he was still detained, Santiago met with Corine Dominguez, an El Paso-based attorney. They spoke for ten to twenty minutes, during which time, according to Santiago, Dominguez agreed "to defend [him]" and "to prove that [he] was innocent" in exchange for $200. Dominguez did not advise Santiago of the relief available to him and did not discuss admitting the allegations of the NTA or conceding the charges of removability.

Dominguez filed a motion for bond redetermination on January 18, 2000, requesting that Santiago's bond be reduced and

---

[4]Section 1227(a)(1)(A) of Title 8 of the U.S. Code incorporates the grounds of inadmissibility as grounds of removability, stating that: "Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." 8 U.S.C. § 1227(a)(1)(A). One ground of inadmissibility is that the alien, "at any time[,] knowingly . . . encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E).

[5]Section 1227(a)(1)(E)(i) of Title 8 of the U.S. Code provides that: "Any alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable." 8 U.S.C. § 1227(a)(1)(E)(i).

[6]The INS ceased to exist in 2003, and most of its functions were transferred to the Department of Homeland Security (DHS) and its subagencies, including Immigration and Customs Enforcement (ICE). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 291); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 n.7 (9th Cir. 2007) (en banc).

representing that Santiago would be applying for cancellation of removal. Santiago was ineligible for this form of relief, as he had been an LPR for less than a year. *See* 8 U.S.C. § 1229b(a) (permitting cancellation of the removal of aliens who have been LPRs for at least five years and meet other requirements).

Dominguez's bond redetermination motion was unsuccessful, but Santiago eventually paid the $5,000 bond. The record is silent as to when Santiago was released on bond, but he met with Connexion Legal ("Legal Connection"), a Los Angeles-based *notario*,[7] in late January or early February. Connexion Legal agreed to help Santiago with his immigration proceedings, initially by trying to have the case transferred to Los Angeles from El Paso. On February 3, 2000, someone from Connexion Legal mailed to the immigration court in El Paso a motion to change the venue of Santiago's immigration proceedings to Los Angeles. The first paragraph of the motion states that "[Santiago] admits to the allegations of the United Government [sic], conceding removability in this case." Although the motion purports to have been filed *pro se* by Santiago himself, Santiago says he did not sign it and that no one from Connexion Legal reviewed it with him or made him aware of its contents. Santiago also maintains that the motion's two signatures, purporting to be those of Santiago, are not his; the Government does not dispute this assertion, and a comparison of the signatures on the motion with Santiago's known signature supports it.

---

[7]"The term 'notario' or 'notary' in our immigration case law refers to individuals who either (a) hold themselves out as immigration law experts, even though they are not attorneys; or (b) act as gatekeepers for 'appearance attorneys' with limited or no knowledge of their client's case." *Avagyan v. Holder*, ___ F.3d ___, 2011 WL 2586275, at *9 n.2 (9th Cir. 2011) (citing *Mendeza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1077 n.4 (9th Cir. 2007)). Based on the record in this case, Connexion Legal falls into the latter category.

On February 22, 2000, the INS mailed a notice that it did not oppose Santiago's first motion to change venue. Two days later, Dominguez, apparently unaware of that motion, hand delivered a second motion to change venue, along with a motion to withdraw as Santiago's counsel, to the INS District Counsel in El Paso. This motion also states that Santiago "admits the allegations in the [NTA] and concedes that he is removable," and contains the boilerplate representation that Santiago would be applying for "Political Asylum, Voluntary Departure and/or other relief from removal available to him under the Immigration Laws of the United States."

The record is unclear as to which motion to change venue was granted or when it was granted, but Santiago's master calendar hearing was held in Los Angeles on April 26, 2000. Santiago was represented at this hearing and the four that followed by attorney Xavier Vega. Vega's services were apparently secured by Connexion Legal, to which Santiago paid $300 for each of Vega's appearances. Santiago only met with Vega just prior to each hearing, for a few minutes each time.

The master calendar hearing was continued until May 24, 2000. At the continued hearing, the IJ noted that Santiago had admitted the allegations and conceded removability in a prior motion to change venue. Vega so acknowledged, but stated that he would be seeking a waiver of the grounds of removability under 8 U.S.C. § 1182(d)(11). Section 1182(d)(11) provides that certain aliens guilty of smuggling their spouses, parents, or children into this country can apply for a waiver of that ground of removability. *See* 8 U.S.C. § 1182(d)(11); *id.* § 1227(a)(1)(E). The hearing was continued again until August 31, 2000, at which time Vega again acknowledged being aware of the concessions, but again asserted that Santiago was entitled to a waiver. The INS attorney, however, indicated at this hearing that the Government would be contesting Santiago's eligibility for a waiver in light of the concession that he had smuggled his brother into the United States, as no waiver is available to aliens who smuggle siblings. The hear-

ing was continued once more, until January 17, 2001, at which time Vega acknowledged that the earlier concessions made Santiago ineligible for a waiver, and Santiago was ordered removed to Mexico. At no time did Vega seek to withdraw the concessions of Dominguez or Connexion Legal.

Santiago paid Connexion Legal to prepare his appeal to the BIA. Connexion Legal filed an appeal brief on Santiago's behalf; again, Santiago was not asked to review the brief, and again, the document contains a signature that purports to be Santiago's, but is not. The BIA dismissed Santiago's appeal on February 12, 2002.

In January 2003, Santiago met with Ronald Matten, an attorney with the law firm that currently represents him. Matten agreed to review Santiago's file, which he did on February 5, 2003, discovering what he believed to be ineffective assistance of counsel. In preparation for filing a motion to reopen, Matten informed Dominguez by letter dated March 20, 2003 that he would be filing a complaint regarding her representation of Santiago. When Dominguez did not respond, Matten filed a complaint on Santiago's behalf with the Texas Bar by letter dated April 16, 2003.[8] Additionally, on March 23, 2003, Matten filed a complaint with the Consumer Protection Unit of the Los Angeles County District Attorney's Office on Santiago's behalf against Connexion Legal.[9] No complaint was ever filed against Vega.[10]

---

[8]The record contains no information about the resolution of this complaint, and Dominguez has no public disciplinary history noted on the website of the State Bar of Texas, which lists Dominguez as currently working for ICE.

[9]The Consumer Protection Unit responded by letter dated March 27, 2003, stating that the complaint had been referred to the Los Angeles City Attorney for the initial investigation. No further action on this complaint is noted in the record.

[10]The California Bar disciplined Vega in 2007, however, for conduct somewhat similar to what occurred here. *See* Order, *Matter of Xavier Vega*, Nos. 05-O-01314-DFM & 05-O-03887-DFM (Cal. Bar Ct. Dec. 5, 2007)*, available at* http://members.calbar.ca.gov/courtDocs/05-O-01314.pdf.

Matten filed the motion to reopen Santiago's proceedings with the BIA on April 29, 2003. About a week later, the Government filed a Statement of Non-Opposition to the Motion to Reopen. The BIA granted the motion and remanded the case for further proceedings.

The reopened proceedings were convened before a different IJ on March 18, 2004. During this hearing, Matten told the IJ that Santiago was seeking to withdraw the prior plea; to deny the charges of removability; and to suppress the evidence obtained by the Government on the day Santiago was arrested in El Paso. The IJ continued the hearing to give Santiago time to file his motion to suppress.

At the beginning of the final hearing, the IJ summarily denied the motion to suppress and the motion to withdraw Santiago's plea. When Santiago's counsel protested, the IJ permitted Santiago to put on evidence regarding why he should be permitted to withdraw the admissions and concessions.

Santiago then testified as recited above. Following Santiago's testimony and cross-examination, the IJ rendered her oral decision, which had two principal holdings: First, the IJ held that Santiago had not demonstrated the "egregious circumstances" necessary to justify withdrawing the admissions made by Dominguez on Santiago's behalf in the second motion to change venue.[11] Second, the IJ reasoned that under *Matter of Velasquez*, 19 I. & N. Dec. 377 (BIA 1986), Dominguez's choice to admit the allegations is presumed to have been a strategic decision that binds Santiago, and because the admission likely prompted the INS not to oppose the Motion to Change Venue, Santiago had benefitted from Dominguez's actions. Moreover and "most importantly," according to the

---

[11]In light of the apparent forgery of Santiago's signature, the IJ explicitly did not rely on the admissions made in the first Motion to Change Venue filed by Connexion Legal.

IJ, Santiago had appeared in Immigration Court while represented by Vega and "reaffirmed the pleadings," yet Santiago did not allege that Vega had been ineffective.

In the alternative, the IJ held that even if Santiago could withdraw his plea, his testimony "is sufficient to find [him] removable as charged."[12] The IJ said that Santiago's assertion that he did not help his brother enter illegally because Luis had, at all times, paid his own way, was "a mere detail," because Santiago "was aware of and assisted in [Luis'] arrangements [to enter illegally] by accommodating." The IJ concluded by noting that:

> Though the word "accommodating" is not in the statute, it does say "knowingly encouraged, induced, assisted, abetted, or aided." The Court finds that the respondent did assist and abet the brother in traveling through Mexico, coming to the border, knowing full well the intentions of the brother, knowing that the brother did not have a ticket to return to Mexico, knowing [w]hat the brother's intentions were, in leaving his wife in the company of the brother, knowing full well that the wife's intentions were having made those accommodations. Therefore, the charge is sustained.

In light of her holding that Santiago had helped Luis enter illegally, the IJ declared Santiago removable as charged, determined him ineligible for any waiver, and ordered him removed.

Santiago timely appealed to the BIA, making the same arguments he presses here. Pursuant to 8 C.F.R.

---

[12]Due to a number of concerns, including its reliability, the IJ explicitly disregarded any evidence obtained during Santiago's arrest at the El Paso airport (the I-213 and I-215B). As the contested evidence was excluded from consideration, we do not consider Santiago's suppression argument.

§ 1003.1(e)(5), a single member of the BIA reviewed the appeal, which was dismissed in a per curiam order dated October 24, 2005. The BIA's order stated, in relevant part:

> We . . . affirm the Immigration Judge's application of *Matter of Velasquez*, 19 I. & N. Dec. 377 (BIA 1986), to the facts of the instant case, and we affirm her conclusion that there was no showing of "egregious circumstances" with respect to [Santiago's] prior counsel's concession to the charges of removability or the change of venue. *Id.* Finally, we affirm the Immigration Judge's ultimate conclusion that the respondent did not suffer ineffective assistance of counsel.

The BIA, however, "decline[d] to address the remainder of the issues raised in [Santiago'] brief," including that the IJ erred in holding, in the alternative, that Santiago's testimony established that by "accommodating" Luis's attempt to enter the country illegally, Santiago was removable as an alien smuggler and ineligible for a waiver of that ground of removability.

Santiago timely petitioned for review of the BIA's order.

## SCOPE & STANDARD OF REVIEW

"Where, as here, the BIA 'has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's.' " *Blanco v. Mukasey*, 518 F.3d 714, 718 (9th Cir. 2008) (quoting *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002)). "In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam).

"Questions of law, including claims of due process violations due to ineffective assistance, we review de novo."

*Mohammed v. Gonzales*, 400 F.3d 785, 791-92 (9th Cir. 2005); *see also Jie Lin v. Ashcroft*, 377 F.3d 1014, 1023 (9th Cir. 2004). Factual findings, including "findings of fact regarding counsel's performance," are reviewed for substantial evidence, *id.*, meaning that they "are 'conclusive unless any reasonable adjudicator would be compelled to conclude the contrary.' " *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## DISCUSSION

To deport an alien, such as Santiago, who has been lawfully admitted to this country, the Government has the burden of establishing "by clear, unequivocal, and convincing evidence" that he is removable under one or more statutory grounds. *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 679 (9th Cir. 2005) (citation omitted); *see also* 8 U.S.C. § 1229a(c)(3)(A). Here, the Government has charged Santiago with being removable under 8 U.S.C. §§ 1227(a)(1)(E)(i) and 1182(a)(6)(E) for smuggling his wife and brother into the United States. To sustain those charges, the Government must prove by clear and convincing evidence that Santiago took actions with regard to his wife and brother that amount to "knowingly . . . encourag[ing], induc[ing], assist[ing], abett[ing], or aid[ing]" their unlawful entry into the United States. 8 U.S.C. § 1227(a)(1)(E)(i); *id.* § 1182(a)(6)(E); *see also Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204, 1209 (9th Cir. 2008); *Altamirano v. Gonzales*, 427 F.3d 586,594 (9th Cir. 2005); *Hernandez-Guadarrama*, 394 F.3d at 679-80.

Under certain circumstances, a factual admission made by an alien, or his attorney on his behalf, can satisfy the Government's burden. By regulation, for example, the IJ must require the alien "to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." 8 C.F.R. § 1240.10(c).[13] If the individual admits the factual alle-

---

[13] By statute and regulation, the NTA must specify, *inter alia*, the alien's "acts or conduct alleged to be in violation of law" and "the charges against

gations at this stage and the IJ accepts the admission, it binds the alien and "relieve[s] the [G]overnment of the obligation to present any evidence on th[at] factual question." *Perez-Mejia v. Holder*, 641 F.3d 1143, 1154 (9th Cir. 2011); *see also Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir. 2008); *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 905 (9th Cir. 2007). Typically, an attorney's in-court admission of the NTA's allegations made on behalf of his alien client is treated no differently. *See Perez-Mejia*, 641 F.3d at 1146 (noting that where counsel expressly conceded removability at a hearing and the concession was "correct as a matter of law," the government's burden to prove removability was satisfied).

Santiago does not contest that he helped smuggle his wife, and therefore does not seek to withdraw that admission.[14] The admission that Santiago does seek to withdraw—that he "knowingly encouraged, induced, assisted, abetted, or aided" his brother Luis "to enter or try to enter the United States" illegally—was made on his behalf by his attorney, Dominguez, in a motion to change venue.[15] An admission made by an attorney in a written filing is governed by the BIA's precedential opinion *Matter of Velasquez*, 19 I. & N. Dec. 377 (BIA 1986).

---

[him] and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(C) & (D); 8 C.F.R. § 1003.15(b)(3) & (4).

[14]As previously mentioned, the admission that he smuggled his wife renders Santiago removable, but that ground of removability can be waived. *See* 8 U.S.C. § 1182(d)(11); *id.* § 1227(a)(1)(E). Santiago never had the opportunity to seek such a waiver, however, because the IJ held that he was removable for smuggling his brother, for which no waiver is available.

[15]Whether Santiago "knowingly encouraged, induced, assisted, abetted, or aided" Luis's illegal entry involves questions of both law and fact. The law defines what actions count as "encourag[ing], induc[ing], assist[ing] abett[ing] or aid[ing]" another to illegally enter the country; whether Santiago took one of those unlawful acts is a question of fact. Dominguez's factual admission, therefore, was that Santiago committed an unlawful action with regard to Luis's illegal entry.

In *Velasquez*, as here, the immigrant's first attorney admitted the factual allegations in the charging document and conceded removability in a motion to change venue. *See id.* at 378. When the Government did not oppose the move, the motion was granted. *See id.* After the proceedings were commenced in the new venue, Velasquez (with the aid of a new attorney) denied the allegations. *See id.* at 379. The Government then introduced the motion to change venue as evidence of Velasquez's removability. The IJ overruled Velasquez's objections, admitted the evidence, and on that basis ordered him deported. *See id.*

**[1]** On appeal, the BIA affirmed and set forth the general rule applicable here: "Absent egregious circumstances"—an exception we discuss in a moment—an attorney's written admission "is binding on [the] alien client and may be relied upon as evidence of [removability]" when that admission is: (1) "distinct" and (2) "formal," and made (3) "by an attorney acting in his professional capacity" (4) "as a tactical decision." *Id.* at 382 (citations omitted).

We first consider whether the BIA erred in holding that Santiago could be bound by his lawyers' admissions. The first two requirements are not met as to Vega. Although the IJ held that the "most important[ ]" reason for denying Santiago's request to withdraw the admissions was that Vega had "reaffirmed" them, that's just not so. As the IJ herself said, Vega merely acknowledged that he was aware that the concessions had already been made and that they made Santiago ineligible for a waiver. The IJ faulted Vega for not seeking to "withdraw the plea or challenge the sufficiency of the plea," but those failures were omissions. Under *Velasquez*, an omission or failure to object cannot bind an alien because, by definition, neither is a "distinct and formal admission." *Velasquez*, 19 I. & N. Dec. at 382. Santiago therefore never needed to be relieved of admissions or concessions made by Vega, as Vega never made any.

**[2]** As to Dominguez, the first three of the *Velasquez* requirements are unquestionably met. Dominguez's admissions were "distinct and formal, for they appear in a pleading filed with the immigration court," and were made "at a time when [she] was [Santiago's] official attorney of record." *Id.* The record as to the fourth requirement—that the decision to admit the factual allegations be a "tactical decision"—is relatively thin, but the BIA had an adequate basis for holding that it was met. As it noted, there is a presumption that Dominguez's decision was a tactical one. *See id.* That presumption is corroborated in this case by the fact that Dominguez's decision to admit the allegations and concede removability made the motion to change venue more likely to be granted. *See id.* at 383 ("[Velasquez's attorney] reasonably may have concluded that by conceding deportability he would relieve the [Government] of its burden of producing the evidence and witnesses needed to prove the respondent's deportability and thereby heighten the chance that the [Government] would not oppose a change of venue.").[16] The BIA thus did not err in holding that Dominguez's factual admissions and concession of removability could be imputed to Santiago. *See id.* at 382.

**[3]** But that is not the end of our inquiry, for *Velasquez* sets forth three types of "egregious circumstances" that, if present, justify relieving an alien of his attorney's admissions, even when those admissions meet the previously-discussed criteria. Although not couched in constitutional terms, the "egregious circumstances" *Velasquez* identifies are all related to the due process guarantee that removal proceedings accord with fundamental fairness. To comply with due process, evidence relied on in removal proceedings must be probative and its

---

[16]In considering a motion to change venue, IJs determine whether good cause exists by "balancing the factors . . . relevant to the venue issue," including "administrative convenience, expeditious treatment of the case, location of witnesses, and cost of transporting witnesses or evidence to a new location." *Matter of Rahman*, 20 I. & N. Dec. 480, 482 (BIA 1992) (citation omitted).

use must be fundamentally fair. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 823 (9th Cir. 2003); *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995); *see also* 8 U.S.C. § 1229a(c)(3)(A) ("No decision on [removability] shall be valid unless it is based upon reasonable, substantial, and probative evidence."). As will become evident, *Velasquez*'s "egregious circumstances" all concern situations in which an attorney's admission is not probative of the truth of the NTA's factual allegation, or where using the admission as evidence of removability would not be fundamentally fair, or both.

The first circumstance in which an alien must be relieved of an admission of counsel is if binding him to that admission would "produce[ ] an unjust result." *Velasquez*, 19 I. & N. Dec. at 383. An inadvertent admission would fall into this category. *See, e.g.*, *Ali v. Reno*, 829 F. Supp. 1415, 1425 (S.D.N.Y. 1993) (holding, in habeas corpus proceeding reviewing the rescission of permanent resident status, that the alien could not withdraw the prior concessions of counsel because "there has been no showing that counsel's concessions regarding rescission and excludability were inadvertent, unfair or extraordinary"), *aff'd* 22 F.3d 442 (2d Cir. 1994); *cf. Cortez-Pineda v. Holder*, 610 F.3d 1118, 1122 n.2 (9th Cir. 2010) (refusing to bind the government to a mistaken factual assertion regarding the alien's entry date). So, too, would a situation "where the propriety of an admission or concession has been undercut by an intervening change in law." *Matter of Chavez-Mendoza*, No. A90 542 948, 2005 WL 649052, at n.3 (BIA Feb. 2, 2005) (unpub.); *see, e.g.*, *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003) (permitting an alien to challenge his removability, despite conceding it before the IJ, because an intervening change in the law meant that he was not, in fact, removable).

The second circumstance in which an alien is not bound by his counsel's factual admissions or concession of removability is if the alien subsequently offers evidence proving that "the factual admissions and concession of [removability] were

untrue or incorrect." *Velasquez*, 19 I. & N. Dec. at 383; *see, e.g.*, *Mai v. Gonzales*, 473 F.3d 162, 167 (5th Cir. 2006) (reversing the BIA's denial of a motion to reopen, where the alien's prior attorney had admitted the NTA's factual allegations, which the alien "strongly denied"); *cf. Torres-Chavez*, 567 F.3d at 1102 (refusing to permit an alien to withdraw his attorney's tactical decision to admit alienage because, *inter alia*, the attorney "simply conceded that [his client] was an alien, a fact that [his client] has never suggested is untrue"); *Roman v. Mukasey*, 553 F.3d 184, 187 (2d Cir. 2009) (rejecting the argument that the Government should have had to submit evidence of an alien's prior conviction, despite an attorney's admission, because, *inter alia*, the alien "does not allege that the admissions were inaccurate"); *Matter of Saleh*, No. A096 437 096, 2008 WL 5025192 (BIA Oct. 28, 2008) (per curiam) (holding that the IJ did not abuse his discretion in declining to allow an alien to withdraw admissions under *Velasquez* because "the respondent was unable to demonstrate that the [previously-admitted] allegations were false").

The third and final circumstance in which an alien can withdraw his attorney's admissions is where such admissions "were the result of unreasonable professional judgment," *Velasquez*, 19 I. & N. Dec. at 383—i.e., ineffective assistance of counsel. If, for example, Dominguez admitted the allegations and conceded Santiago's removability without a factual basis for doing so, that circumstance would justify disregarding the admissions. *See, e.g.*, *Matter of Morales-Bribiesca*, No. A047 770 293, 2010 WL 4500889 (BIA Oct. 18, 2010) (unpub.) ("[T]he respondent's prior attorney admitted that she conceded the respondent's removability [for alien smuggling] without first speaking to the respondent or discussing the factual allegations with the respondent. . . . [G]iven the egregiousness of the representation, we do not deem the attorney's admission binding on the respondent." (citing *Velasquez*, 19 I. & N. Dec. at 382)); *Matter of Shafiee*, No. A24 107 368, 2007 WL 1168488 (BIA Mar. 2, 2007) (unpub.) (granting a motion to reopen and holding that an attorney's concession of

removability based on the alien's "insistence on expediting a case is no excuse for failing to research and advise a client that there is no sound basis for the charges").

On the other hand, in circumstances in which the attorney, after carefully weighing all the relevant facts and exploring the available legal options, decides that the best course of action is to admit the factual allegations and concede removability, it is unlikely that she rendered ineffective assistance, even if that decision appears unwise in hindsight. *See, e.g.*, *Torres-Chavez v. Holder*, 567 F.3d 1096, 1101-02 (9th Cir. 2009) (holding that an attorney was not ineffective for abandoning a legal defense that had "dismal prospects for success," conceding removability, and "focusing the court's attention on a particular basis for relief") (citation omitted); *Magallanes-Damian v. INS*, 783 F.2d 931, 934 (9th Cir. 1986) (holding that an attorney's decision to forego a motion to suppress evidence of alienage, to admit alienage, and to concede removability in exchange for a lengthy voluntary departure period was not ineffective assistance, and therefore the aliens were bound by his admissions, because the attorney's decision was "based on his belief that pending amnesty legislation would allow petitioners to become lawful permanent residents."); *Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir. 1983) (holding that an attorney's decision to forego a defense and to concede removability was not ineffective assistance, and therefore the aliens were bound by his concession, because in exchange, he "was able to secure an extended period during which the [aliens] could liquidate their assets in an orderly fashion and still voluntarily leave the country"); *Rodriguez-Gonzalez v. INS*, 640 F.2d 1139, 1142 (9th Cir. 1981) (holding that an attorney's decision to admit his clients' immigration status and forego a motion to suppress was made to focus attention on a labor law defense and therefore not ineffective assistance, so the aliens could be bound to the admissions).

**[4]** Santiago has persuasive arguments that all three egregious circumstances are present here. Before addressing the

particular egregious circumstances, we emphasize that what actions counted as alien smuggling was relatively unclear in this circuit until *Altamirano*, 427 F.3d at 592. *Altamirano* was decided in 2005, some eight months after the IJ issued her opinion in this case. It held that alien smuggling "requires an affirmative act of help, assistance, or encouragement" that is not satisfied by "mere presence and knowledge" that an accompanying alien is attempting to enter the country illegally. *Id.*; *see also Aguilar Gonzales*, 534 F.3d at 1209 (holding that "[a]cquiescence is not an affirmative act" supporting alien smuggling).

**[5]** The pre-*Altamirano* ambiguity helps explain the IJ's alternate holding—that even if Santiago could withdraw Dominguez's admission, his testimony alone established that he had smuggled his brother by "accommodating" Luis's attempt to enter the United States illegally. That said, if the IJ's decision was inconsistent with *Altamirano*, then the IJ erred as a matter of law; it does not matter that *Altamirano* was decided after the IJ's decision, because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express*, 511 U.S. 298, 312-13 (1994) (footnote omitted); *see also Aguilar Gonzalez*, 534 F.3d at 1208 n.2 ("Although *Altamirano* was decided after the IJ rendered his decision, the holding is applicable here because it establishes the proper interpretation of the statute since the statute's inception." (citing *United States v. City of Tacoma*, 332 F.3d 574, 581 (9th Cir. 2003)).

**[6]** Dominguez's factual admission that Santiago was guilty of smuggling Luis necessarily incorporated the legal background applicable at the time—in particular, what facts were required, as a matter of law, to make one guilty of smuggling. As explained, *Altamirano* rendered "a change, or at least a significant clarification, of the law." *Huerta-Guevara*, 321 F.3d at 886. Binding Santiago to the admission that he

smuggled his brother Luis even after *Altamirano* would "produce[ ] an unjust result," *Velasquez*, 19 I. & N. Dec. at 383, if Santiago can make a prima facie showing that his actions would not constitute smuggling under the clarified, correct interpretation of the smuggling statute. *See Huerta-Guevara*, 321 F.3d at 886; *Velasquez*, 19 I. & N. Dec. at 383.

But even though the BIA dismissed Santiago's appeal a year after *Altamirano* was decided, it never acknowledged the change in the governing law and, in fact, refused to consider the IJ's alternative holding that Santiago's testimony demonstrated he was guilty of smuggling. Instead, the BIA dismissed Santiago's appeal solely on the basis that Dominguez's admission of the NTA's factual allegation was sufficient evidence from which the IJ could find Santiago removable. Thus, the BIA never considered whether there was "evidence reveal[ing] a reasonable likelihood" that Santiago would not be removable under the correct statutory interpretation, *Ali v. Holder*, 637 F.3d 1025, 1032 (9th Cir. 2011) (defining "[a] prima facie case"), and so has not yet evaluated whether *Velasquez*'s first "egregious circumstance" is present. We therefore cannot consider the issue on appeal, and would remand if Santiago is not entitled to relief on the issues that we can reach. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam); *Pannu v. Holder*, 639 F.3d 1225, 1229 (9th Cir. 2011).

Additionally, although the BIA's refusal to review the IJ's alternate holding means we cannot consider its merits either, *see Andia*, 359 F.3d at 1184, that holding does shed light on one aspect of the IJ's refusal to let Santiago withdraw Dominguez's admission: the IJ clearly thought she was refusing to permit Santiago to withdraw a factual admission that was *true*. From the IJ's point of view, it did not really matter whether Santiago could withdraw the admission that he had smuggled Luis or not, because she thought Santiago's testimony independently established that he was guilty of smuggling. But *if* the IJ's alternative holding was erroneous, and

Santiago's testimony established that he had *not* provided Luis "an affirmative act of help, assistance, or encouragement," *Altamirano*, 427 F.3d at 592, then the IJ refused to allow Santiago to withdraw an admission that record evidence demonstrated was *false*.

**[7]** An important implication of the BIA's refusal to consider the IJ's alternative holding, then, is that it ordered Santiago removed on the basis of an admission that might be false. The BIA's implicit, perhaps inadvertent, holding—that a legal permanent resident can be removed on the basis of a barebones admission made by an attorney in a written motion, despite record evidence demonstrating that the admission could be false due to changes in the legal landscape—is inconsistent with *Velasquez* and due process. Binding an alien to an erroneous factual admission of his attorney, and ordering him removed from this country on that basis, would "deprive[ ] [Santiago] of an[ ] opportunity to be heard, present evidence, [and to] press [his] case fully." *Torres-Chavez*, 567 F.3d at 1102 (citation and quotation marks omitted, last alteration in original). In other words, if the IJ's alternate holding was erroneous, an issue we cannot consider based on the current posture of the case, then *Velasquez*'s second "egregious circumstance" would be present, and Santiago should have been relieved of Dominguez's admission. *See Velasquez*, 19 I. & N. at 383.

**[8]** We turn, therefore, to the third "egregious circumstance": whether Dominguez's admission was the result of ineffective assistance of counsel.[17] *See id.* In immigration proceedings, the right to effective assistance of counsel "is governed by the Fifth Amendment due process right to a fair hearing." *Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004) (emphasis omitted), *amended by* 404 F.3d 1105 (9th Cir. 2005). "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amend-

---

[17]The BIA did reach this "egregious circumstance," albeit summarily.

ment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999) (internal quotation marks omitted). To show that Dominguez's representation of him was so ineffective that it violated his right to due process, Santiago must demonstrate both that Dominguez's performance was deficient and that he was prejudiced thereby. *See Torres-Chavez*, 567 F.3d at 1100-01; *Lin*, 377 F.3d at 1027.

**[9]** We first consider whether Dominguez's performance was deficient. As mentioned, the law regarding what actions constitute alien smuggling was somewhat ambiguous until *Altamirano*. Given the uncertain state of the law at the time, it would be difficult to fault Dominguez for admitting the NTA's allegation that Santiago smuggled Luis *if* she had sufficient knowledge of the facts to make a strategic judgment based on the plausible statutory interpretations. *See Torres-Chavez*, 567 F.3d at 1102. Santiago's testimony, however, indicates that Dominguez did not bother to investigate any details about what happened, nor did she inform Santiago that she intended to admit the allegations that he had smuggled both his wife and brother. Although Dominguez apparently saw copies of the I-213 and I-215 that purported to memorialize the airport interrogation—documents the IJ later determined to be unreliable—Santiago testified that he told Dominguez that he smuggled only his wife, and not his brother, and that the documents' account was untrue. Absent an investigation into the discrepancy between her client's story and the NTA's allegations, Dominguez had no basis for admitting the allegations.

**[10]** The serious consequences of the admission, moreover, were as clear then as they are now. The admission effectively denied Santiago the "opportunity to be heard, present evidence, [and to] press [his] case fully," *Torres-Chavez*, 567 F.3d at 1102 (citations and quotation marks omitted), and "ensured that he was deprived of all possibility for relief from

deportation." *Mai*, 473 F.3d at 167; *cf. Singh v. Holder*, ___ F.3d ___, 2011 WL 2899607, at *4-5 (9th Cir. 2011) (holding that counsel rendered ineffective assistance when his errors prevented an alien from filing a motion to reopen and potentially rendered him ineligible for adjustment of status). In light of the consequences, Dominguez's admission of the factual allegation without any factual basis for doing so clearly constitutes deficient performance. *See Nehad v. Mukasey*, 535 F.3d 962, 971-72 (9th Cir. 2008) (holding that an attorney's actions depriving his client of the "authority to decide whether, and on what terms, to concede his case" constituted deficient performance); *Mai*, 473 F.3d at 167; *Lin*, 377 F.3d at 1027; *cf. Torres-Chavez*, 567 F.3d at 1102.

That conclusion is bolstered by other indicia of ineffective assistance, such as Dominguez's assertion in the motion for bond redetermination that Santiago would be applying for a form of relief (cancellation of removal) for which he was ineligible; the boilerplate representation in the motion to change venue that Santiago would be applying for "Political Asylum, Voluntary Departure and/or other relief from removal available to him under the Immigration Laws of the United States;" and Dominguez's failure to respond to the detailed complaint Santiago mailed her regarding her representation of him.

**[11]** The prejudice to Santiago, moreover, is clear. In situations, such as this, where an attorney's incompetence prevents an alien from presenting his case altogether, "the proceedings are subject to a 'presumption of prejudice,' and we will find that [the alien] has been denied due process if he can demonstrate 'plausible grounds for relief' on his underlying claim." *Ray v. Gonzales*, 439 F.3d 582, 587 (9th Cir. 2006) (quoting *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045-46 (9th Cir. 2000)); *see also Lin*, 377 F.3d at 1027. Although the case law regarding the reach of the smuggling ground of deportation was not settled at the time the admission was entered, there was certainly a *plausible* argument then—and

a strong one now, given *Altamirano*—that counsel could have made regarding its inapplicability to Santiago had she inquired and become aware of the facts. *See Aguilar Gonzalez*, 534 F.3d at 1209; *Altamirano*, 427 F.3d at 594.

**[12]** In sum, we hold that Dominguez's admission of the NTA's allegation that Santiago smuggled his brother Luis was the product of ineffective assistance of counsel and that it prejudiced Santiago. *See Ray*, 439 F.3d at 587. The BIA therefore erred in not permitting Santiago to withdraw the admission. *See Velasquez*, 19 I. & N. Dec. at 383.

## CONCLUSION

The petition for review is granted. We remand to the BIA for it to consider the IJ's alternative holding that Santiago's testimony established that he "knowingly encouraged, induced, assisted, abetted, or aided" his brother Luis to enter the United States illegally. 8 U.S.C. § 1227(a)(1)(A) & (a)(1)(E)(i); *see Hernandez-Cruz v. Holder*, ___ F.3d ___, 2011 WL 2652461, at *11 (9th Cir. 2011) ("[O]ur review is limited to '[t]he grounds upon which . . . the record discloses that [the agency's] action was based.' " (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (all but first alteration in original)); *Andia*, 359 F.3d at 1184 ("If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."). If the agency ultimately concludes that the Government has not carried its burden of proving that Santiago is removable for smuggling his brother, Santiago must be given the opportunity to seek a waiver for the ground of removability that he does not contest, the smuggling of his wife.

**PETITION GRANTED; REMANDED.**

CALLAHAN, Circuit Judge, dissenting:

After Santiago entered formal admissions to the allegations in the Notice to Appear and conceded removability, the Government agreed not to oppose his Motion to Change Venue. Now — several years and a couple of different attorneys later — Santiago seeks to withdraw his formal admissions. However, he has not shown either that the admissions he made were false, or that there are egregious circumstances compelling the withdrawal of those admissions. Accordingly, I respectfully dissent.

As the majority recognizes, the general legal framework for this case was set forth in *Matter of Velasquez*, 19 I&N Dec. 377 (BIA 1986), as follows:

> Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission. Thus, when an admission is made as a tactical decision by an attorney in a deportation proceeding, the admission is binding on his alien client and may be relied upon as evidence of deportability.

*Velasquez*, 19 I&N Dec. at 382 (internal citations omitted).

Santiago cannot obtain relief here because he cannot show egregious circumstances compelling the withdrawal of his prior admissions. At the end of the day, several key facts remain undisputed. When Santiago was in Mexico marrying his wife, Santiago's brother lived in Santiago's house in Mexico. After the wedding, Santiago, his wife, and his brother traveled around Mexico, and they all took a plane together to Juarez, Mexico, right next to the United States border. Santiago bought the airline ticket for his wife, and his brother bought one for himself. While Santiago, his wife, and brother were all together in Juarez, Santiago bought a green card for

his wife and his brother bought one for himself. Santiago used a coyote to cross the border into El Paso, Texas, and then separately, his wife and brother traveled across the border using one or more coyotes. The three of them met up together in El Paso and went to a travel agency, where Santiago's brother and wife bought tickets to Los Angeles. They all then traveled together to the El Paso airport, where they were apprehended. At that time, Santiago was carrying false documents in his bag for both his brother and his wife. These undisputed facts add up to a series of group-oriented, carefully coordinated, smuggling-related events. Taken together, they show that Santiago aided his brother in illegally entering the United States.

After discussing "everything" with Santiago (which presumably included all the facts set forth above), Attorney Dominguez entered formal admissions on Santiago's behalf. These admissions prompted the government to agree not to oppose Santiago's Motion to Change Venue from El Paso, Texas to Los Angeles, California, where Santiago resided, and thus "the decision to admit the allegations and concede removability made the motion to change venue more likely to be granted." Majority at 17156. As the IJ stated, and the majority does not dispute, Santiago "received a benefit in return for his change of venue to the detriment of the Government by giving up the locale where there[sic] witnesses were located." *See* Majority at 17156. Having received a strategic benefit from his admissions, and being unable to show that the admissions were in fact false, Santiago is now unable to show "egregious circumstances" sufficient to compel the withdrawal of his admissions.

Here, the majority seeks to avoid this conclusion by focusing on the theoretical possibility that Santiago's testimony *might* be construed to suggest that the admissions he entered were not, in fact, true. The majority states that Santiago may not be guilty of smuggling because he has protested that he is "innocent" of the charges and that he did not "help" his

brother, only his wife. However, these are legal conclusions, not factual ones. The *facts* that Santiago now admits reasonably support a finding that he aided and abetted his brother's entrance into this country, consistent with the admissions made by his attorney. Even if a trier of fact were not *compelled* to conclude that Santiago had failed to show egregious circumstances, a trier of fact certainly *could* reasonably so conclude.[1]

The majority faults the BIA for not acknowledging the legal significance of *Altamirano v. Gonzales*, 427 F.3d 586 (9th Cir. 2005). Majority at 17160-61. The majority misses the point. The BIA cannot be faulted for failing to explicitly acknowledge *Altamirano,* because *Altamirano* does not change the outcome of this case. *Altamirano* held that riding in a car carrying undocumented aliens was not in itself an "affirmative act" of aiding and abetting. *See Altamirano*, 427 F.3d at 592. However, Santiago did much more. He traveled with his wife and brother, in a coordinated fashion, to multiple different locations. He made arrangements and paid for his wife to be smuggled into the United States, all the while aligning these arrangements with his brother's arrangements. Further, Santiago carried false immigration documents for his brother while in the El Paso airport. *Altamirano* does not hold that what Santiago did — as he now admits — was not aiding and abetting.

The majority's reliance on *Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204 (9th Cir. 2008), is also not persuasive because that case does not support the conclusion that Santiago's

---

[1]This is particularly true because Attorney Vega was fully aware of the admissions that Santiago had entered through Attorney Dominguez, and Vega did not seek to withdraw them. The majority dismisses Vega's conduct as a mere "omission" and asserts that it cannot constitute a separate "distinct and formal admission" that binds Santiago. Assuming this is true, Vega's actions (or lack thereof) still can be considered by the BIA when determining whether Santiago showed egregious circumstances sufficient to relieve him from his *previously*-entered admissions.

admitted actions do not constitute aiding and abetting. In *Aguilar Gonzalez,* the petitioner reluctantly allowed her father to use her son's birth certificate to facilitate the smuggling of an alien infant, and then accompanied him and the infant across the United States-Mexico border. *See id.* at 1206-07. In a split decision, we held that the petitioner's acquiescence was not an affirmative act. *Id.* at 1209. Santiago's situation is materially different from the petitioner in *Aguilar Gonzalez.* Santiago did not merely acquiesce and accompany; he personally arranged and paid for his wife's illegal entry, coordinating it with his brother's own illegal entry, through multiple locations and over the span of multiple days. Santiago's involvement with the illegal smuggling was far greater than the reluctant petitioner in *Aguilar Gonzalez.* Given the facts of this case, the BIA reasonably determined that Santiago had not shown egregious circumstances because he had not presented anything to compel the conclusion that his earlier factual admissions were, in fact, untrue.

As the majority acknowledges, the IJ's decision, after hearing evidence, to hold Santiago to his judicial admissions is reviewed for abuse of discretion. Majority at 17158 (citing *Matter of Saleh*, No. A096 437 096, 2008 WL 5025192 (BIA Oct. 28, 2008) (per curiam)). Here, the BIA did not misinterpret or misapply the law (even accounting for *Altamirano*), it did not make an unwarranted finding of fact, and it did not otherwise abuse its discretion. We should not compel the BIA to accept Santiago's withdrawal of his duly-entered admissions simply because a trier of fact *might* have been able to determine that his testimony *might* be consistent with a determination that he is innocent of the smuggling charges. Here, the facts that Santiago *continues* to admit reflect that he is guilty of smuggling, and the formal admissions that he entered secured him a procedural advantage. Santiago has not shown "egregious circumstances." I would deny the petition.