NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MINA SABER LABIB SOLIMAN, | No. 19-70701 |
| Petitioner, | Agency No. A216-553-900 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of Order of the
Board of Immigration Appeals

Argued and Submitted May 10, 2021
Pasadena, California

Before: R. NELSON and BADE, Circuit Judges, and HELLERSTEIN,[**] District Judge.

Mina Saber Labib Soliman, a native and citizen of Egypt, petitions for review of the Board of Immigration Appeals' ("BIA's") decision affirming an immigration judge's ("IJ's") order denying his application for asylum and withholding of

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, sitting by designation.

removal.[1]   Petitioner principally challenges the BIA and IJ's (collectively, "Agency's") determination that he failed to demonstrate "a well-founded fear of persecution" under 8 U.S.C. § 1101(a)(42)(A).  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

We review an agency's factual findings for substantial evidence, and "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).  We review de novo the Agency's conclusions of law.  *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc).

The Attorney General is authorized to grant asylum to a "refugee."  8 U.S.C. § 1158(b)(1).  A "refugee" is a person who is unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  "An applicant may establish a 'well-founded

---

[1]   Petitioner does not challenge the BIA's determination that he had waived his challenge to the IJ's denial of relief under the Convention Against Torture.  As such, we address only Petitioner's application for asylum and withholding of removal.  *See Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency." (internal quotation marks and citations omitted)); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996) (noting that issues not specifically raised in a party's opening brief are waived).

2

fear of future persecution' in two ways: by proving past persecution, or by demonstrating that he [or she] has a 'subjectively genuine and objectively reasonable' fear of future persecution." *Bringas-Rodriguez*, 850 F.3d at 1062 (quoting *Navas v. INS*, 217 F.3d 646, 654 (9th Cir. 2000)).

We agree with the Agency's denial of asylum because Petitioner has not demonstrated either past persecution or an objectively reasonable fear of future persecution. Persecution is an "extreme concept, marked by the infliction of suffering or harm . . . in a way regarded as offensive." *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc) (internal quotation marks and citations omitted). Threats can constitute persecution, but "in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (internal quotation marks and citations omitted).

Here, Petitioner testified to three general sources of threats he received in Egypt. First, Petitioner explained that he experienced various forms of discrimination from his manager at work, a Salafi Muslim, who would not permit him to take time off for Christian holidays and reprimanded him for using company computers for religious purposes. The same manager also made threatening remarks to Petitioner and urged him to convert to Islam. Second, Petitioner testified that he received telephone calls and text messages from unknown individuals who would

tell him that he was doing "the work of infidels" and encourage him to "join Islam." Third, Petitioner testified that, after he quit his job and launched his own consulting business out of his home, three or four men dressed in Salafi Muslim attire came to his home and inquired if he could do marketing work for their religion. Petitioner refused, the men attempted to forcibly make him go with them, and a physical altercation ensued between him and the unknown men until neighbors intervened. Petitioner did not seek medical attention following the physical confrontation, and he did not report the incident to police because he conjectured that police officers could be Salafi sympathizers.

The Agency found that these experiences, "even in the aggregate," did not rise to the level of past persecution. We agree. The sole physical confrontation did not result in any actual suffering or harm. *See Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (finding no error in the BIA's conclusion that an applicant did not establish past persecution on account of a single beating and two days of detention, which resulted in injuries that "required no formal medical attention and had no lasting physical effect"); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (concluding that harassment, threats, and one beating did not compel a finding of past persecution). Other threats that Petitioner received, including telephone threats urging him to stop practicing Christianity, were "anonymous" and "vague," and such threats "rarely constitute persecution." *Duran-Rodriguez v. Barr*, 918 F.3d 1025,

4

1028 (9th Cir. 2019). Even in the aggregate, Petitioner's experiences do not compel the conclusion that they were "so overwhelming so as to necessarily constitute persecution." *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995); *cf. Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (holding that assassinations, death threats, beatings, and home invasions rose to the level of past persecution).

Because Petitioner has failed to establish past persecution, he bears the burden to show that he faces a well-founded fear of future persecution upon removal. *See* 8 C.F.R. § 1208.13(b); *Karouni v. Gonzales*, 399 F.3d 1163, 1170 (9th Cir. 2005). "For a fear [of future persecution] to be well-founded, it must be both subjectively genuine and objectively reasonable." *Lim*, 224 F.3d at 934. Petitioner fears that he will be harmed for being a Coptic Christian based on prior threatening experiences he had in Egypt. The Agency concluded that this fear, relating to harm by private actors, does not constitute "an objectively reasonable fear of future persecution," because Petitioner has not shown that Egyptian authorities would be "unable or unwilling" to protect him. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010) ("[The petitioner] has the burden of establishing that . . . the persecution was committed by the government, or by forces that the government was unable or unwilling to control."). Substantial evidence supports the Agency's conclusion. The record evidence demonstrates that the Egyptian government has adopted policies to protect minority religious groups. For instance, Petitioner

provides a 2016 International Freedom Report indicating that the Egyptian government employed an alternative dispute resolution known as "customary reconciliation" to deescalate sectarian violence. According to the report, the intent "was for parties to agree on measures to stop the conflict, which might include punishment of the perpetrators by expulsion from the village, compensation for the affected parties, or a penalty clause for the future breaching of any agreement." Petitioner argues that this report shows the alternative dispute resolution is actually a means to avoid punishing Muslim persecutors of Christians because Christians are pressured to enter the program to forgive their persecutors without punishment, citing a 2011 Human Rights Watch report. This evidence is not enough to compel a finding contrary to the Agency's. The record also supports the Agency's finding that the Egyptian government has put these policies into practice by protecting religious minorities from harm and holding accountable perpetrators of religious violence. For example, the 2016 report provided by Petitioner indicates that the Egyptian police successfully rescued Christian victims of kidnappings. News articles submitted by Petitioner also show that the Egyptian authorities frequently arrested and prosecuted perpetrators of religious violence against Christians.

We agree also with the Agency's denial of Petitioner's withholding application. To succeed on an application for withholding of removal, the noncitizen must show a "clear probability" of persecution because of a protected ground. *INS*

*v. Stevic*, 467 U.S. 407, 429–30 (1984). Demonstrating a clear probability "requires objective evidence that it is more likely than not that the [noncitizen] will be subject to persecution upon deportation." *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006) (internal quotation marks and citations omitted). This "clear probability" standard for withholding of removal is more stringent than the well-founded fear standard for asylum. *Navas*, 217 F.3d at 663. "A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation." *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000). Here, substantial evidence supports the Agency's conclusion that Petitioner has failed to demonstrate the lower burden required for asylum. Petitioner has also failed to meet the higher burden required for withholding of removal under 8 U.S.C. § 1231(b)(3).

**PETITION FOR REVIEW DENIED.**