**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 20 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE VERGARA SALGADO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-755

Agency No.
A213-082-602

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 16, 2023[**]
San Francisco, California

Before: FORREST and MENDOZA, Circuit Judges, and OLIVER, Senior District
Judge.[***]

Petitioner Jose Vergara Salgado ("Salgado") seeks review of a decision by

the Board of Immigration Appeals (the "BIA" or the "Board") to dismiss his

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Solomon Oliver, Jr., Senior United States District
Judge for the Northern District of Ohio, sitting by designation.

appeal from an Immigration Judge's ("IJ") denial of his application for asylum, withholding from removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction to review the Board's decision under 8 U.S.C. § 1252. After reviewing the Board's factual findings for substantial evidence, and its legal conclusions de novo, *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022), we deny the petition for review.

Salgado mounts several arguments in his petition for review.[1] We first address his challenge to the Board's conclusion that his proffered PSGs are not legally cognizable. Salgado claimed membership in three social groups: (1) families from Guerrero, Mexico who are perceived to have money, (2) families from Guerrero who refuse to cooperate with criminal organizations, and (3) men working in agriculture from Guerrero, Mexico who refuse to cooperate with criminal organizations. However, to establish a cognizable PSG, Salgado must show that his proposed social groups are: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially

---

[1] The BIA did not address the IJ's adverse credibility determination or the IJ's finding regarding Salgado's untimely asylum application because the Board found Salgado's grounds for relief deficient on the merits. Accordingly, the Court declines to address Salgado's arguments on these issues. *See Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011) (explaining review is limited to the grounds relied on by the Board). Moreover, because the BIA did not make an adverse credibility finding, we accept Salgado's testimony as true for the purpose of our review. *Kumar*, 728 F.3d at 998.

distinct within the society in question." *Akosung v. Barr*, 970 F.3d 1095, 1103 (9th Cir. 2020) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

With respect to the first proffered group, Salgado has not alleged facts to demonstrate that his family is "socially distinct" or identifiable by their perceived wealth. *See* 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C) (noting the applicant bears the burden of establishing eligibility for asylum or withholding from removal). Salgado claims that because he would be a total stranger returning to Guerrero after thirty years, he will be recognized as a person who has money or whose family is perceived to have money. Without providing supporting facts to show how wealthy families are perceived differently in Guerrero, Salgado simply alleges that because Guerrero is the poorest state in Mexico, wealthy families in Guerrero are necessarily socially distinct. However, such an inference is insufficient to establish a legally cognizable PSG. *See Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1228-29 (9th Cir. 2016) (finding "imputed wealthy Americans" returning to Mexico was insufficiently distinct or otherwise recognized as a discrete class in Mexico).

Similarly, Salgado's remaining two PSGs are also not legally cognizable because they are not socially distinct or sufficiently particular. The key to sufficiently defining a PSG is ensuring the group is defined narrowly rather than overly broad. *Ochoa v. Gonzales*, 406 F.3d 1166, 1170-71 (9th Cir. 2005)

(concluding a group of business owners who refused to pay money to criminal organizations was "too broad" to constitute a PSG); *see also Santos-Lemus v. Mukasey*, 542 F.3d 738, 745-46 (9th Cir. 2008) (finding that "young men in El Salvador resisting gang violence" was too loosely defined to satisfy the particularity requirement), *abrogated by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) *on other grounds*. Here, Salgado's final two proffered groups include a "sweeping demographic division" too broad and diverse to qualify as a narrowly defined social group. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) ("[I]ndividuals falling within the parameters of this sweeping demographic division naturally manifest a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings.") (citing *Ochoa*, 406 F.3d at 1171 (quoting *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1577 (9thCir. 1986)). Considering our precedent, Salgado's proffered social groups are not legally cognizable.

Even if Salgado were able to establish membership in a protected group, he is unable to satisfy the nexus requirement for asylum or withholding from removal. *See Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (determining even if membership in a particular social group is established, an applicant must still show that "persecution was or will be on account of his membership in such group"). Salgado alleges that because he would be perceived to have money, and because

members of his family were targeted by the cartels in Guerrero, he has a reasonable fear of persecution. Notably, these arguments neglect to allege a nexus between Salgado's membership in his latter two proffered PSGs. Moreover, just because multiple members of Salgado's family have unfortunately been killed or suffered harm in their home country does not mean they were subjected to harm *because of* their shared association in Salgado's family or perceived wealth, which is the essence of the nexus inquiry. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 356-57 (9th Cir. 2017).

Without evidence demonstrating that the cartels singled out members of Salgado's family because of their relation to one another and their refusal to cooperate with the cartel's regime, or evidence that the cartels uniquely target male agricultural workers or people they perceive as wealthy, Salgado's fear amounts to a generalized fear of criminal activity in his home country. Such a fear is insufficient to demonstrate that Salgado has a fear of persecution on account of his protected social groups. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (noting that an applicant's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground"). Because Salgado has failed to establish membership in a legally cognizable PSG or a nexus connecting his fear of persecution to a PSG, his basis for asylum and withholding from removal necessarily fail. *See* 8 U.S.C.

§§ 1158(b), 1231(b)(A). Accordingly, we decline to address Salgado's remaining arguments regarding these grounds for protection.

Finally, Salgado argues with respect to his CAT claim that the Board and the IJ failed to consider country-conditions evidence demonstrating that Mexican officials would acquiesce to his torture. Contrary to Salgado's contention, the IJ *did* consider this evidence and the BIA affirmed the IJ's conclusion that Salgado has failed to demonstrate that, more likely than not, he will be tortured by or with the consent or acquiescence of the government if returned to Mexico. *See* 8 C.F.R. § 1208.18(a)(1) (explaining torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"). Although Salgado testified about police corruption in Mexico, as well as his and his family's experiences with cartel violence in Guerrero, he offers no evidence of a "particularized risk of torture…higher than that faced by all Mexican citizens." *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 751-52 (9th Cir. 2022). Thus, the Board did not err in denying Salgado's CAT claim.

PETITION DENIED.