[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12383

_____

Agency No. A213-003-089

HELOYNE DOS SANTOS,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 11, 2020)

Before GRANT and MARCUS, Circuit Judges, and AXON,[1] District Judge.

GRANT, Circuit Judge:

Heloyne Dos Santos is a native and citizen of Brazil, but she has lived in the

United States since she was a child.  Alerted to her presence after she was arrested

_____

[1] Honorable Annemarie C. Axon, United States District Judge for the Northern District of
Alabama, sitting by designation.

for driving while intoxicated, federal authorities sought to remove her to Brazil. At the immigration hearings that followed, Dos Santos admitted that she had unlawfully entered the United States and conceded removability. She now asks us to release her from that concession; instead of living with her earlier admission, she wishes to present more evidence to the immigration judge. But because her concession was not obviously incorrect—and even if it had been incorrect was not the product of unreasonable professional judgment by her attorney or otherwise so unfair that it led to an unjust result—she is bound by it.

I.

Dos Santos, it seems, was brought by her mother to the United States on a six-month tourist visa when she was 12 years old. Fast forward 16 years. By then, Dos Santos was living in Charlotte with her partner and working as a housekeeper. But that status quo was upended when she was arrested for driving while intoxicated. The arrest brought her to the attention of the Department of Homeland Security, which detained her and initiated removal proceedings by filing a Notice to Appear. The government alleged in the Notice that Dos Santos arrived in the United States at an "unknown place" on an "unknown date" and was not "admitted or paroled after inspection by an Immigration Officer." It charged Dos Santos with removability as an "alien present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i).

Her first appearance before the immigration judge was about a month later. There, through her attorney, Dos Santos admitted the factual allegations in the Notice to Appear and conceded that she was removable as charged. Her attorney

2

indicated that Dos Santos would instead be applying for asylum, withholding of removal, and Convention Against Torture (CAT) protection. He also suggested that she might marry her partner, who could then petition for an adjustment of immigration status on Dos Santos's behalf.

Dos Santos made another appearance before the immigration judge later that same month, where she submitted her completed applications (for asylum, withholding of removal, and CAT protection). These papers indicated that she last entered the United States on a tourist visa on December 31, 2002. She also testified in support of the applications that she had entered the United States on a tourist visa. Still, at no point did she contest removability or seek to withdraw her concession that she was removable.

The immigration judge's decision came a few months later. The judge found, based on Dos Santos's admission of the factual allegations and her concession of removability, that she was "removable from the United States as charged." He then turned to her new applications for asylum, withholding of removal, and CAT protection. He observed that Dos Santos's "testimony concerning her entry" was "not consistent" with her concession of removability. Specifically, while Dos Santos had first conceded that she was removable for unlawfully entering the United States, she later testified in support of her asylum application that she entered lawfully with a tourist visa. No matter—Dos Santos's application for asylum was denied as untimely in any event. And her claims for withholding of removal and CAT relief were denied on the merits.

3

Dos Santos appealed those denials to the Board of Immigration Appeals, this time with a new attorney. She also had a new approach: she abandoned her asylum, withholding of removal, and CAT claims, and instead argued that the immigration judge erred by ordering her removed under § 1182 for unlawfully entering the United States. She contended that her factual admissions and concession of removability were "plainly contradicted by the record"—which she says proves that she was lawfully admitted in 2002 on a tourist visa—and that she should "not be bound by them at all." According to Dos Santos, she should have been charged under 8 U.S.C. § 1227 for overstaying her six-month tourist visa— not § 1182 for unlawful entry. She also alleged that her first attorney provided ineffective assistance of counsel. In an attempt to firm up these claims, Dos Santos submitted a photocopy of her passport as well as a Form I-94, which purportedly shows that she was admitted to the United States with a tourist visa on December 31, 2002.

The Board dismissed her appeal. It observed that Dos Santos, through her attorney, "made oral and written admissions that she was removable as charged." While acknowledging that she later made assertions that were inconsistent with those admissions, the Board noted that such switches are not unusual; immigration judges, it explained, "routinely encounter evidence inconsistent with prior pleas by an alien." The Board also noted that lawful admission in 2002 is not "mutually exclusive" with a later unlawful entry. In other words, both her concession and her testimony could be true: at some point after her initial lawful entry, Dos Santos could have left and reentered the United States unlawfully.

4

The Board also rejected Dos Santos's ineffective assistance of counsel claim. It determined that she had "not complied with the procedural requirements" that are necessary to bring an ineffective assistance of counsel claim before the Board under *Matter of Lozada*. *See* 19 I. & N. Dec. 637 (BIA 1988). Those requirements include providing the attorney with an opportunity to respond to the allegations and, in some cases, noting whether a complaint was filed with the relevant disciplinary authorities. *Id.* at 639.

Finally, the Board construed her submission of new evidence as a motion to remand. It then concluded that Dos Santos failed to show, as she must, that the new evidence "could not have been presented" to the immigration judge—her passport and Form I-94 had always been available. And the Board also reiterated its view that, in any event, her evidence of a lawful entry is not material because it is not "mutually exclusive" with a later unlawful entry. So the Board denied her motion.

Dos Santos then petitioned this Court for review.

## II.

When the Board issues a decision, we review only that decision, except to the extent that the Board adopts the immigration judge's reasoning. *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1312 (11th Cir. 2006). In that case, we review the immigration judge's reasoning as well. *Id.* Here the Board's decision was a mix of its own reasoning and reasoning it adopted from the immigration judge.

We review the Board's legal conclusions de novo. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). But we review its factual

findings under the "highly deferential" substantial evidence standard. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). Under that standard, we view the record evidence "in the light most favorable" to the Board's decision and "draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We can reverse the Board's factual findings "only if the evidence 'compels' a reasonable fact finder to find otherwise." *Sepulveda*, 401 F.3d at 1230 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

## III.

A litigant is generally "bound by the admissions in his pleadings." *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983). And it has long been understood that a party who "voluntarily chose" an attorney to represent her cannot later choose to "avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962). Any other rule "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Id.* at 634.

The same is true for aliens. Under the Board's long-standing precedent, a "distinct and formal" admission or concession "by an attorney acting in his professional capacity binds his client as a judicial admission." *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (BIA 1986). So, for example, when an attorney makes a tactical admission before an immigration judge, that admission is

6

"binding on his alien client and may be relied upon as evidence of deportability." *Id.*

There is, however, a "narrow exception" to the general rule that an alien is bound by her attorney's concession. *Guzman-Rivadeneira v. Lynch*, 822 F.3d 978, 981 (7th Cir. 2016). As the Board puts it, "egregious circumstances" can release an alien from her attorney's concession of removability. *Velasquez*, 19 I. & N. Dec. at 382. We, like other circuits that have considered the issue, accept this "egregious circumstances" standard. *See Guzman-Rivadeneira*, 822 F.3d at 982–83; *Hanna v. Holder*, 740 F.3d 379, 387–90 (6th Cir. 2014); *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 830–33 (9th Cir. 2011). It is consistent with the due process guarantee that removal proceedings be "fundamentally fair." *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2005).

Of course, endorsing the term "egregious circumstances" is different than defining it. So we still have to do the latter. Three factors traditionally build out the standard for "egregious circumstances": (1) whether the concession was "untrue or incorrect," (2) whether the concession was so unfair that it led to an unjust result, and (3) whether the concession was the "result of unreasonable professional judgment." *See Velasquez*, 19 I. & N. Dec. at 383; *see also Guzman-Rivadeneira*, 822 F.3d at 982; *Hanna*, 740 F.3d at 387–88; *Santiago-Rodriguez*, 657 F.3d at 831–32. But because consideration of these factors can be ordered or weighted in different ways, and those differences can be outcome-determinative, we will explain further.

As a starting point, the challenged concession must be untrue or incorrect. If not, we stop there. After all, holding an alien to a true concession is not "egregious" in any respect. But untruth, or the appearance of untruth, is not enough. Indeed, it will "often be the case that evidence in the record may to some degree conflict with a concession of removability." *Hoodho v. Holder*, 558 F.3d 184, 192 n.6 (2d Cir. 2009). The Board recognized as much here, noting that immigration judges "routinely encounter evidence inconsistent with prior pleas by an alien." But evidence that is inconsistent with a concession does not, by itself, "obviate the general rule" that concessions are binding on a party throughout the litigation. *Id.*

This makes sense for a practical reason as well. When an alien makes a concession, it is unlikely that there will be much record evidence to support the conceded point. After all, a concession on any point eliminates any need for the government to develop the record to support it. The conceded facts are "established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941)). Having once conceded an issue, an alien cannot be released from that concession simply by scouring the record for evidence that contradicts the concession and then complaining that none of the other evidence supports it.

Indeed, it is often beside the point that a concession was untrue or incorrect. After all, parties make concessions for a range of reasons, and a concession may even be a tactical decision by the attorney rather than a simple statement of fact. In

8

immigration proceedings, as elsewhere, when a party offers a concession, there is a "strong presumption" that it was a "reasonable tactical decision." *Velasquez*, 19 I. & N. Dec. at 382; *see also Santiago-Rodriguez*, 657 F.3d at 831. For example, an alien may concede removability to improve her odds of having the immigration judge grant another motion she has pending. *See Santiago-Rodriguez*, 657 F.3d at 831; *Velasquez*, 19 I. & N. Dec. at 383. And new tactics cannot erase old ones; an alien cannot later abandon a concession solely because her strategy changes and she finds evidence in the record suggesting that the original concession may have been incorrect. To hold otherwise would invite abuse of the pleading process.

A showing of incorrectness is necessary, then, to release an alien from her concession—but it is not sufficient. Once she has shown that the concession was untrue, she must go on to prove one of the two circumstances that can release her from her concession: that it was so unfair that it led to an unjust result or that it was the product of unreasonable professional judgment. *See Hanna*, 740 F.3d at 388; *Velasquez*, 19 I. & N. Dec. at 383.

We begin with the former: whether the concession was "so unfair" that it "produced an unjust result." *Velasquez*, 19 I. & N. Dec. at 383. Two situations come to mind. A concession may fall under this umbrella if it was inadvertent— that is, unintentional. *See Hanna*, 740 F.3d at 388; *Santiago-Rodriguez*, 657 F.3d at 831. Creating room to reconsider an unintentional concession does not encourage the pleading problems invited by releasing a petitioner from a tactical concession. Binding the petitioner to an earlier concession may also produce an unjust result if a subsequent change in law has "undercut" the "propriety of an

9

admission or concession." *Hanna*, 740 F.3d at 388 (quotation omitted); *see also Santiago-Rodriguez*, 657 F.3d at 831.  That would be the case, for example, if a change in the law means that an alien no longer qualifies as removable as charged.

These examples are illustrative rather than complete; other circumstances may arise that meet the standard.  Still, we emphasize that more is required than a general sense of unfairness or a desire to give the petitioner another shot at litigating her case in a different manner.  The opportunity to rescind concessions so unfair that they produce an unjust result is important, but not unlimited.

One other route to rescission is also available: a petitioner may argue that her earlier concession was the product of "unreasonable professional judgment." *Velasquez*, 19 I. & N. Dec. at 383.  The clearest way to do that would be to show ineffective assistance of counsel.  *See, e.g.*, *Santiago-Rodriguez*, 657 F.3d at 832.  To establish ineffective assistance of counsel in immigration proceedings, "an alien must establish that his or her counsel's performance was deficient to the point that it impinged the 'fundamental fairness' of the hearing." *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1221 (11th Cir. 2003) (quotation omitted).[2]  And the alien must also show that her attorney's deficient performance prejudiced her—that is, a "reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Dakane*, 399 F.3d at 1274.

---

[2] Of course, *Lozada* requires that parties making ineffective assistance of counsel claims before the Board comply with certain procedural requirements, including providing that attorney an opportunity to respond to the allegations. *See* 19 I. & N. Dec. at 639.  And it is unclear "whether and when the *Lozada* procedural requirements also apply to" arguments under the unreasonable-professional-judgment factor. *Guzman-Rivadeneira*, 822 F.3d at 983.  We need not decide that point here.

To summarize: a petitioner may be released from a counseled concession only if she can show that "egregious circumstances" are present. To make that showing, she must first demonstrate that the concession was untrue or incorrect. Only then can she argue that she should be released from the concession because it led to an unjust result or was the product of unreasonable professional judgment. With that rule in place, we now apply it to the facts at hand.

IV.

We begin with the threshold hurdle: whether the concession made by Dos Santos was untrue. Dos Santos noted in her asylum application that she was admitted to the United States in 2002 on a tourist visa. She also testified to that fact before the immigration judge. As the Board acknowledged, the tourist-visa testimony was "inconsistent" with her concession that she unlawfully entered the United States. But the Board also found that Dos Santos's testimony and her concession were not "mutually exclusive." It reasoned that after Dos Santos's lawful entry in 2002, she could have left and reentered the United States unlawfully on a later date which would make both her concession and her testimony true. Under that logic, the Board concluded that Dos Santos could not withdraw her concession that she was removable as charged.

That was a factual finding of the Board, one that we can disturb only if the record "compels" a reasonable fact finder to reach a different conclusion. *Sepulveda*, 401 F.3d at 1230 (quotation omitted). But the record does not compel a different conclusion here. After all, Dos Santos indeed could have left the United States after her initial entry and then later reentered unlawfully. Nothing in the

11

record forecloses that possibility. Moreover, because she was pursuing asylum, withholding of removal, and CAT protection, it is unsurprising that Dos Santos would not disclose travel back to Brazil. As the government points out, "an individual claiming a fear of returning to her home country" has "an incentive not to disclose travel to that country." The record evidence therefore does not compel the conclusion that her concession was incorrect. Given that, we accept the Board's factual finding.

That said, even if her concession were incorrect, Dos Santos could not show either of the two circumstances that could release her from a concession. *First*, the concession did not lead to an unjust result. Dos Santos does not argue that her concession was inadvertent or that an intervening change in the law renders her not removable. Instead, she argues the substantive point that she has been charged with the "wrong grounds for removal." Even if that is true, she would still be removable for overstaying her tourist visa, which only lasts as much as one year absent any extension. *See* 8 U.S.C. § 1227(a)(1)(B); 8 C.F.R. § 214.2(b)(1). And according to the evidence she submitted to the Board, Dos Santos's visa was valid for only six months. So if Dos Santos is right that she never left and reentered the United States after being admitted in 2002, then she remained in the United States for more than 15 years after her visa expired. That would make her removable under § 1227, and she has not adequately explained how it would be "unjust" to remove her under one provision when she is technically removable under a different one.

12

*Second*, Dos Santos cannot show that her concession was the product of unreasonable professional judgment. Her first argument under this factor boils down to this: conceding unlawful entry closed off one possible pathway to permanent residency—marriage. Dos Santos testified before the immigration judge that she could marry her partner, who is a United States citizen. If she had done so, her partner could have applied for a spousal visa for Dos Santos, which would have allowed Dos Santos to seek an immigration status adjustment during the removal proceedings. That pathway, she argues, is closed to aliens who were not lawfully admitted, but is open to those who were. But it would not take her anywhere in any event because there is no evidence in the record that Dos Santos did in fact marry her partner. As a result, she cannot show that she would be eligible for a status adjustment based on marriage regardless of whether she was lawfully admitted to the United States in the first place.

Dos Santos also contends that her original attorney provided ineffective assistance of counsel by failing to visit her in person, explain all of her available legal options, apply for bond, or apply for certain forms of relief for which she was eligible. As an initial matter, it is unclear whether Dos Santos can satisfy the standard for unreasonable professional judgment by arguing ineffective assistance of counsel before this Court when the Board found that she did not comply with *Lozada*'s procedural requirements for bringing that claim below. *See Guzman-Rivadeneira*, 822 F.3d at 983–84. But we need not decide that here because Dos Santos has not demonstrated that her concession was prejudicial—which would have been required to show ineffective assistance of counsel in any event. *See*

13

*Dakane*, 399 F.3d at 1274.  As we noted above, even if she were not removable on the ground charged by the Notice to Appear, she would be removable under § 1227 for overstaying her tourist visa.  Moreover, it is not clear that Dos Santos's claims about her lawyer are related to the now-challenged concession.  She therefore has not shown that "but for [her] counsel's deficient representation" she "would not have been ordered deported."  *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999).  So her second unreasonable-professional-judgment argument also fails.

## V.

We last consider whether the Board erred by denying Dos Santos's motion to remand based on new evidence.  A motion to remand based on new evidence is treated as a motion to reopen, the denial of which is reviewed for abuse of discretion.  *See Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1317 (11th Cir. 2020).  We ask whether the Board exercised its discretion in an arbitrary or capricious manner.  *Id.*  The Board may grant a motion to reopen only if, among other things, the "evidence sought to be offered is material."  8 C.F.R. § 1003.2(c)(1).  A petitioner attempting to show materiality bears a "heavy burden" and must present evidence that "would likely change the result in the case."  *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256–57 (11th Cir. 2009).

Dos Santos has not met that heavy burden.  The new evidence Dos Santos wanted to introduce on remand—a photocopy of both her passport and Form I-94—is not material.  In fact, that evidence is cumulative of her testimony in immigration court, which the immigration judge already credited in any event.

14

And as we discussed above, even if Dos Santos were lawfully admitted to the United States in 2002 on a tourist visa, that evidence does not necessarily contradict her concession of removability.  The two are not mutually exclusive. Her new evidence is therefore not material.

*     *     *

Once made, an admission or concession before the immigration judge is not easy to withdraw.  Although the egregious-circumstances exception offers an important path for doing so, that path is also a narrow one.  Only very limited circumstances will qualify.  Because Dos Santos has not shown that those circumstances are present here, we **DENY** her petition.