[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11164

Non-Argument Calendar

_____

JOSE ROMAN MUNOZ-AGUIRRE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-021-676

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Jose Munoz-Aguirre appeals the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") orders denying his motions to suppress evidence and terminate proceedings based on an alleged Fourth Amendment violation and finding that he was removable.  He argues that all evidence of his alienage should be suppressed because his immigration status was initially discovered during an illegal traffic stop.  He also requests that we remand his case to the BIA to allow for the possibility that the Department of Homeland Security ("DHS") exercises its prosecutorial discretion not to have him removed in light of the Supreme Court's decision in *United States v. Texas*.[1]  Because the BIA correctly determined that the unlawfulness of the traffic stop was immaterial to the disposition of his case due to the fact that Munoz-Aguirre stipulated to the IJ that he was removable, we affirm the BIA's decision.  We do not address Munoz-Aguirre's request to remand his case to the BIA so that DHS might exercise its prosecutorial discretion because we lack jurisdiction over this request.

## I.    Background

Munoz-Aguirre entered the United States from Mexico on April 1, 1996.  During his time in the United States, he has worked

---

[1] *United States v. Texas*, 599 U.S. 670 (2023).

in manual labor positions.  Since October 2016, he has worked as a farmer at Creek Farm Wash in Jemison, Alabama.  According to Munoz-Aguirre's sworn affidavit, he was on his way to work on January 8, 2018, when he approached law enforcement officers who were partially blocking a road on the farm.  The officers did not have permission from the farm's owner to be on the property and Munoz-Aguirre was not committing any traffic violations while driving on the farm.  The officers signaled for Munoz-Aguirre to pull over.  After stopping the vehicle, an officer asked Munoz-Aguirre a series of questions, including whether he was in the United States legally, to which Munoz-Aguirre responded "no."  As a result of this answer, Munoz-Aguirre was issued a Notice to Appear ("NTA") which charged him with being removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled.

Munoz-Aguirre was scheduled to appear before an IJ in New Orleans, Louisiana on August 15, 2018.  He retained counsel who filed a motion to change the venue of his removal proceedings from New Orleans to Atlanta, Georgia pursuant to 8 C.F.R. § 1003.20, arguing that Atlanta would be a more convenient location for both Munoz-Aguirre and his counsel.  The IJ denied the motion noting that Munoz-Aguirre's counsel "need[ed] to enter pleadings to the NTA" before a transfer of venue could be approved.  Accordingly, Munoz-Aguirre's counsel filed a second motion to change the venue, again arguing that Atlanta was a more convenient venue, but also admitting that Munoz-Aguirre was an alien who was present in the United States without being admitted

or paroled.    Munoz-Aguirre also admitted that "he [was] removable as charged" and "designate[d] Mexico as his country of removal."    Accordingly, the IJ found that good cause had been shown and granted the motion to change the venue to Atlanta.

On February 4, 2019, Munoz-Aguirre appeared before an IJ in Atlanta.  When the IJ asked how Munoz-Aguirre pleaded, his counsel stated that he denied the allegations and was going to file a motion to suppress the evidence of his alienage because he believed it had been obtained in violation of the Fourth Amendment to the U.S. Constitution.  The IJ noted that Munoz-Aguirre had already admitted in his second motion to change venue that he was removable, and it appeared he was now trying to go back on that concession after he had obtained the benefit of the venue change.  Munoz-Aguirre agreed with the IJ that he had "resolved the pleadings by filing [his] [second] motion to change venue" but asserted that the admissions in that motion were "just a mistake" and "should've been a denial."  The IJ thus noted that she "had a pleading filed by an officer of the Court" and that there was "nothing . . . indicating that it [was] suspect."  Accordingly, the IJ found that "based [on] the admission in the Notice to Appear" that Munoz-Aguirre was not a citizen of the United States and was a national of Mexico.  The IJ took note of Munoz-Aguirre's objections to his alienage findings based on the earlier admissions and gave his counsel until the end of the month to file any motions or applications for relief.

After the February 4, 2019, hearing, Munoz-Aguirre filed three motions: a motion to suppress, a motion for discovery, and a motion to terminate removal proceedings. These three motions all raised the same argument, that officials unlawfully seized Munoz-Aguirre and interrogated him in violation of the Fourth Amendment and therefore all evidence of his alienage should be suppressed, and the removal proceedings should be dismissed. Munoz-Aguirre attached an affidavit from himself and Cullom Walker, the owner of the farm, which asserted that Munoz-Aguirre had not committed any traffic violation prior to being stopped and that the officer did not have permission to be on the farm. In a summary order, the IJ denied the motion to terminate removal proceedings noting that Munoz-Aguirre's removability was "established in written pleadings filed within [the second counseled] motion to change venue." The IJ also summarily denied the motions to suppress and for discovery.

After Munoz-Aguirre's motions were denied, he applied for asylum. At the hearing to address his asylum claims, Munoz-Aguirre again attempted to bring up his Fourth Amendment arguments, but the IJ did not allow testimony on the subject and determined that it was already preserved for a potential appeal. Following the hearing, the IJ issued an oral decision denying Munoz-Aguirre's claims for asylum and relief from removal and ordered him removed to Mexico. Munoz-Aguirre appealed this decision to the BIA.

On appeal to the BIA, Munoz-Aguirre again argued that the initial traffic stop, which led to the discovery of his alienage, violated the Fourth Amendment and therefore any evidence of his alienage should be excluded. He concluded his brief before the BIA by asserting that "a recent change in DHS immigration policy" meant that "the U.S. [would] no longer deport people solely because they [were] undocumented" and that he could benefit from this policy. The BIA dismissed Munoz-Aguirre's appeal, reasoning that the constitutionality of his alleged seizure was "not dispositive of [his] appeal" because "the only evidence establishing [his] alienage in this case consist[ed] of [his] own admission, through his counsel" that he was a Mexican national who was present in the U.S. without being admitted or paroled. The BIA thus determined that the IJ "correctly found that alienage ha[d] been established through the written pleadings in the motion to change venue, shifting the burden onto [Munoz-Aguirre] to establish that he was lawfully present in the United States[.]" Because Munoz-Aguirre had not met this burden, the BIA determined that the IJ properly ordered that he be removed. Munoz-Aguirre timely appealed the BIA's decision.

## II.    Standard of Review

We review the BIA's decision as the final judgment and review the IJ's decision as well to the extent that the BIA expressly adopts or agrees with it. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Furthermore, we review our subject matter jurisdiction *de novo*. *Blanc v. U.S. Att'y Gen.*, 996 F.3d 1274, 1277 (11th Cir. 2021).

## III.    Discussion

On appeal, Munoz-Aguirre argues that evidence of his alienage should have been suppressed under the exclusionary rule because in his view the officers egregiously violated his Fourth Amendment rights by stopping him based solely on his race and ethnicity. He asserts that his alienage was only discovered because of this unlawful stop, and therefore any evidence of his alienage should be excluded under the fruit of the poisonous tree doctrine. He also argues that we should remand his case to the BIA in light of the Supreme Court's decision in *United States v. Texas*, which allowed DHS's policy of affording prosecutorial discretion for aliens who are only removable based on their alienage to take effect. The government responds by arguing that even assuming a Fourth Amendment violation did occur, it would not operate to exclude Munoz-Aguirre's concession regarding his alienage in his venue motion. Upon careful review, we agree with the government.

We begin with Munoz-Aguirre's argument that evidence of his alienage should be excluded because his initial traffic stop

constituted an egregious violation of the Fourth Amendment. Whether this traffic stop was an egregious constitutional violation or not is irrelevant because the only evidence that the BIA relied upon in affirming the IJ's decision was Munoz-Aguirre's concession in court filings that he was an alien present in the United States without being paroled or admitted.[2]

"[A] distinct and formal admission or concession by an attorney acting in his professional capacity binds his client as a judicial admission." *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1319 (11th Cir. 2019) (quotations omitted). Therefore, "when an attorney makes a tactical admission before an [IJ], that admission is binding on his alien client and may be relied upon as evidence of [removability]." *Id.* (quotations omitted). Only limited "egregious circumstances" allow an alien to be released from his counsel's concession of removability. *Id.* Three factors are to be utilized in determining if "egregious circumstances" surround a removability admission: "(1) whether the concession was untrue or incorrect, (2) whether the concession was so unfair that it led to an unjust result,

---

[2] To the extent that Munoz-Aguirre is arguing that DHS would not have discovered his identity and initiated removal proceedings against him absent the alleged unlawful traffic stop—and therefore he would not have been in court to make a concession regarding his alienage—such an argument is foreclosed by the Supreme Court's decision in *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984). In *Lopez-Mendoza*, the Supreme Court emphasized that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.* at 1039. Thus, the fact that Munoz-Aguirre was hailed into court cannot be suppressed.

and (3) whether the concession was the result of unreasonable professional judgment." *Id.* (quotation omitted). We have recognized "holding an alien to a true concession is not 'egregious' in any respect," and therefore, if a challenged concession is not untrue or incorrect, "we stop there." *Id.*

Here, the BIA correctly determined that the legality of Munoz-Aguirre's traffic stop was not dispositive of his challenge to the IJ's finding that he was removable. Even if the exclusionary rule applied to Munoz-Aguirre's initial statement to law enforcement, it would not result in the suppression of his counsel's admission in the change of venue motion that Munoz-Aguirre was an alien who was present in the United States without being paroled or admitted into the country. Munoz-Aguirre failed to argue below, and does not argue now, that any of the three factors for being released from his removability concession are present. That is, he has not shown that the concession was (1) false; (2) so unfair as to lead to an unjust result; or (3) the result of unreasonable professional judgment. Indeed, Munoz-Aguirre's counsel made the concession because he wanted the benefit of litigating the case in Atlanta and not in New Orleans, and Munoz-Aguirre has never argued that tactical decision constituted unreasonable professional judgment. Then, after having achieved the change in venue he sought, he attempted to reverse course. Accordingly, the BIA did not err in holding Munoz-Aguirre to this concession and affirming the IJ's removal order.

Turning to Munoz-Aguirre's request for us to remand the case to the BIA so that he might receive the benefit of prosecutorial discretion following the Supreme Court's decision in *United States v. Texas*, we lack jurisdiction over such a request. Under the Immigration and Nationality Act ("INA"), our jurisdiction is limited to reviewing final orders of removal. 8 U.S.C. § 1252(a)(1). Furthermore, the INA deprives us of subject matter jurisdiction over specific types of immigration actions, including over "decision[s] or action[s] by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g). We have held that the plain language of § 1252(g) "bars us from questioning [DHS's] discretionary decisions to commence removal[.]" *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016). Accordingly, we cannot entertain Munoz-Aguirre's request to remand the case to the BIA so that he might be afforded prosecutorial discretion.

**PETITION DENIED IN PART AND DISMISSED IN PART**.