[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13363

Non-Argument Calendar

_____

SANDRA VAIL-ROMERO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-243-360

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Sandra Vail-Romero, a native and citizen of Guatemala, petitions this Court to review the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of asylum pursuant to Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 1208.16(c), and denying her motion to remand to the IJ to consider her eligibility for voluntary departure.

In her petition for review, Vail-Romero makes three arguments. First, she argues that the BIA erred in affirming the IJ's denial of her applications for asylum and withholding of removal because the BIA improperly determined that her particular social group of "indigenous female within the ages of 15 to 30, victim of domestic violence" was impermissibly circular and of "indigenous female trying to leave a relationship" was not socially distinct. Second, she argues that the BIA's determination that she was ineligible for CAT relief because she failed to present evidence demonstrating that the Guatemalan government would consent or acquiesce to her torture was not supported by substantial evidence. Finally, she argues that the BIA abused its discretion in denying her motion to remand for consideration of her motion for voluntary departure.

## I. STANDARD OF REVIEW

We generally "review[] only the BIA's decision, except to the extent the BIA expressly adopted the IJ's opinion or agreed with the IJ's reasoning." *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 988 (11th Cir. 2020). Thus, where the BIA agrees with the IJ's reasoning, we review both the BIA's and IJ's decisions. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). However, findings of the IJ that the BIA did not reach are not properly before us. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007).

We review the BIA's factual findings under the highly deferential substantial evidence standard, which permits reversal only if the record compels, and not merely supports, reversal. *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 734 (11th Cir. 2024). Conversely, we review legal conclusions *de novo*. *Alvarado*, 984 F.3d at 988. Whether an asserted group qualifies as a particular social group under the INA is a legal conclusion reviewed *de novo*. *Perez-Zenteno*, 913 F.3d at 1306.

## II. ASYLUM

The Attorney General may grant asylum to a noncitizen who meets the INA's definition of a refugee. INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is (1) outside the country of her nationality, (2) unwilling to return to that country, and (3) unable to avail herself of its protection (4) because of persecution or a well-founded fear of persecution on account of one of the five statutorily protected grounds. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The five protected grounds are race,

religion, nationality, membership in a particular social group, and political opinion. *Id.* The noncitizen bears the burden of proving qualification as a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).

To be eligible for asylum, the noncitizen must show that she is unable to avail herself of her home country's protection. *Lopez*, 504 F.3d at 1345. When a noncitizen's alleged persecution occurred from the hands of a private actor, the noncitizen must prove she cannot avail herself of her home country's protection "by presenting evidence that [s]he reported the persecution to local government authorities or that it would have been useless to do so." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010) (citing *Lopez*, 504 F.3d at 1345).

Moreover, to meet the burden of establishing eligibility for asylum, the noncitizen must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground, or (2) a "well-founded fear" that they will be persecuted on account of a protected ground, such as membership in a particular social group. *Diallo*, 596 F.3d at 1332 (quotation marks omitted); 8 C.F.R. § 208.13(a)-(b).

An appellant who fails to argue an issue in his initial appellate brief abandons it. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). To preserve an argument, the party must clearly and specifically identify the claim in its brief, such as by devoting a discrete section of its argument to that claim. *Zhou Hua*

*Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1316 n.3 (11th Cir. 2013); *see also Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that a party abandons a claim on appeal when they make passing references to it in their summary of the argument). Even more, to obtain reversal of a judgment "based on multiple, independent grounds," a party must challenge "every stated ground for the judgment against him." *Sapuppo*, 739 F.3d at 680. When a party fails to properly challenge on appeal one of the grounds upon which the judgment against him was based, she has abandoned any challenge of that ground, and the judgment is due to be affirmed. *Id.*

Here, Vail-Romero has abandoned on appeal any arguments related to the BIA's determination that she failed to establish that Guatemalan officials were unable or unwilling to protect her because she failed to sufficiently brief that issue on appeal. Accordingly, because she failed to challenge one of the BIA's independent grounds for affirming the IJ's denial of her applications for asylum and withholding of removal, her petition is due to be denied. Even if she had not abandoned the issue, the BIA's determination that Vail-Romero failed to demonstrate that the Guatemalan government would not, or could not, protect her was supported by substantial evidence. As such, we deny her petition to review these issues and need not address Vail-Romero's arguments that the BIA erred in determining that her particular social groups were not cognizable.

### III. CAT RELIEF

To be eligible for CAT relief, a noncitizen applicant must meet a higher burden of proof than for asylum eligibility and show that she will more likely than not be tortured if returned to the designated country of removal. 8 C.F.R. § 1208.16(c)(2); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020). Torture is defined as an act which inflicts "severe pain or suffering, whether physical or mental," and must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). A government does not acquiesce to torture by non-state actors so long as it combats the unlawful activity in some way, even if the government is unsuccessful. *Reyes-Sanchez*, 369 F.3d at 1243.

Similar to her asylum and withholding of removal claims, substantial evidence supports the BIA's determination that Guatemalan officials would not consent or acquiesce to Vail-Romero being tortured should she return to Guatemala because, by Vail-Romero's own evidence, specifically, the police report, the police did take her claims of domestic violence seriously. Even more, Vail-Romero testified that she witnessed police speaking with her ex-boyfriend after she filed the report. Again, while she speculated that her ex-boyfriend may have talked his way out of being in trouble, the record does not support her theory, and instead makes it seem as though the police took her complaints seriously. Moreover, the country conditions evidence that Vail-Romero presented showed that Guatemala is taking steps to combat domestic

violence and femicide by outlawing both. Simply because Guatemalan officials may not be successful in combating these issues does not mean they will consent or acquiesce to Vail-Romero's potential torture upon her return. *Reyes-Sanchez*, 369 F.3d at 1243. In essence, the record simply does not compel reversal of the BIA's denial of CAT relief. *See Edwards*, 97 F.4th at 734. As such, we deny her petition to review this issue.

## IV. REMAND

"A motion to remand based on new evidence is treated as a motion to reopen, the denial of which is reviewed for abuse of discretion." *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1322 (11th Cir. 2020) (citing *Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1317 (11th Cir. 2020)). Under this standard, we consider whether the BIA exercised its discretion arbitrarily or capriciously. *Id.* at 1323. The BIA generally will not consider in the first instance issues not presented to the IJ. *In re J-Y-C-*, 24 I. & N. Dec. 260, 261 n.1 (BIA 2007) (declining to consider the respondent's claim that she was eligible for asylum based on her mother's death from a forced sterilization procedure because that claim was never raised before the IJ).

An IJ may enter an order granting voluntary departure at the conclusion of the immigration proceedings if the petitioner: (1) has been present in the United States for at least one year; (2) had good moral character for the preceding five years; (3) was not deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) or INA § 237(a)(4), 8 U.S.C. § 1227(a)(4); and (4) she has established by clear and convincing evidence that she has the means to depart the

United States and that she intends to do so. INA § 240B(b)(1), 8 U.S.C. § 1229c(b)(1). The one-year continuous presence requirement looks at whether the noncitizen "has been physically present in the United States for period of at least one year preceding the date the Notice to Appear was served under section 239(a) of the Act." 8 C.F.R. § 1240.26(c)(1)(i).

In the cancellation of removal context, any period of continuous physical presence is deemed to end when the noncitizen is served with a Notice to Appear ("NTA"). *See* INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). In 2018, the Supreme Court in *Pereira v. Sessions*, 585 U.S. 198 (2018), explained that the government could not circumvent this "stop-time" rule by providing noncitizens NTAs that lacked the statutorily required information, such as the time and place of the noncitizen's removal proceedings. 585 U.S. at 202. In 2021, in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), the Supreme Court expanded on its holding in *Pereira*. 593 U.S. at 159-60. There, the Court ruled that the government could not provide piecemeal NTAs to noncitizens when the original NTA did not provide all statutorily required information. *Id.* at 171-72. Instead, to provide a noncitizen with a compliant NTA that stops the clock on the noncitizen's continuous physical presence, the government must provide all required information in a singular document. *Id.*

Here, the BIA did not abuse its discretion in denying Vail-Romero's request to remand her case to the IJ for the purpose of determining her eligibility for and granting voluntary departure because she had an opportunity to request voluntary departure at

many points throughout her immigration proceedings but failed to do so. Specifically, after the IJ informed her that she would not be granting her applications for asylum, withholding of removal, or CAT relief, Vail-Romero never mentioned that she would like to seek voluntary departure, nor did she attempt to move for voluntary departure between the oral pronouncement and the written order. Vail-Romero's reliance on *Niz-Chavez* as the reason why she did not raise the issue is misplaced. While she argues that her claim for voluntary departure was not clear until the *Niz-Chavez* decision, *Pereira*, at the very least, gave her notice that her NTA was insufficient, as the *Pereira* decision was issued before her final immigration hearing. *Pereira*, 585 U.S. at 202. Moreover, at least twice, she raised the issue about her clock being stopped at zero days, demonstrating that the stop time issue was something being considered at that time. While *Niz-Chavez* may have clarified *Pereira*, *Pereira*'s holding did not limit her from validly moving for voluntary departure before the IJ. As such, she was not deprived of an opportunity to request voluntary departure before the IJ, and the BIA did not abuse its discretion in denying her request. Accordingly, we deny her petition to review this issue.

**PETITION DENIED**.