**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10941

Non-Argument Calendar

————————————

VAHAGN PAREMUZYAN,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-120-858

————————————

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Vahagn Paremuzyan—an Armenian national—files this petition for review to challenge the Board of Immigration Appeals'

decision affirming the immigration judge's removal order.  We deny the petition.

## I.

The story behind this case started over a decade ago in Stepanakert—a city in the South Caucasus region of Eurasia. Paremuzyan was an onlooker to a brutal murder.  To cover their tracks, the perpetrators beat him senseless and then kidnapped him.  But Paremuzyan saw an opening for an escape: he told his captors he needed "to go number two," and right after they untied him, he made a break for a nearby forest.  When he returned home, a friend told him that his captors worked for General Manvel Grigoryan—a high-level figure in the Armenian military—and that they were still out to get him.  Scared, Paremuzyan fled to Moscow. But he was apparently a wanted man there too.  So he traveled to Mexico and entered the United States through a border crossing in San Diego, California.

Paremuzyan was then placed in removal proceedings.  At the hearing before the immigration judge, he conceded that he was inadmissible because he lacked valid entry documents.  *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).  He instead applied for asylum, withholding of removal relief, and relief under the Convention Against Torture. Specifically, he sought asylum based on his membership in the asserted "particular social group" comprised of "Armenians who need protection from oligarchs."  The immigration judge denied Paremuzyan's request for humanitarian relief on several grounds—

only two are relevant to this appeal. *First*, he did not qualify as a "refugee" because his asserted particular social group was not legally cognizable. *See* 8 U.S.C. § 1101(a)(42)(A). *Second*, besides Paremuzyan's own uncorroborated testimony, there was no evidence to suggest that his captors worked for General Grigoryan or anyone else in the Armenian government. Paremuzyan sought review from the Board of Immigration Appeals, which adopted much of the immigration judge's reasoning and affirmed. He timely filed a petition for review.

## II.

We review the Board's legal conclusions de novo and its factual findings under the "highly deferential" substantial evidence standard. *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1318–19 (11th Cir. 2020) (quotation omitted).

## III.

The Board concluded that Paremuzyan was not entitled to asylum or withholding of removal relief because his asserted particularized social group—"Armenians who need protection from oligarchs"—was too amorphous to support an asylum claim. *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006) ("The risk of persecution alone does not create a particular social group."). Paremuzyan does not challenge that conclusion. Rather, he argues that the Board should have decided whether he faced persecution on another ground—his imputed political opinion. Under this theory, his captors targeted him because they

thought that he was going to report the murder to the authorities. But Paremuzyan did not present this theory to the immigration judge. In fact, not only does he concede that "his attorney did not explicitly argue imputed political opinion during the proceedings," he told an asylum officer that he did not think that he would be "threatened or harmed in Armenia for a political opinion." Under the Board's precedents, it will generally decline to consider an issue raised for the first time on appeal. *See Matter of J-Y-C-*, 24 I. & N. Dec. 260, 261 n.1 (BIA 2007). The Board therefore did not err by declining to consider Paremuzyan's imputed political opinion theory. And because Paremuzyan did not show that he faced persecution "on account of a protected ground," he is not entitled to asylum relief. *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).

Next, the Convention Against Torture "only provides protection from torture where it is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quotation omitted); *see* 8 C.F.R. § 208.18(a). The Board concluded that Paremuzyan would not likely be tortured by (or with the consent or acquiescence of) an official in the Armenian government if deported. There is substantial evidence in the record to support this conclusion.

To begin, Paremuzyan's captors never identified themselves as affiliated with General Grigoryan. Indeed, Paremuzyan testified that he did not know who his captors were, and that no one

25-10941                Opinion of the Court                5

claiming to work for the General has ever reached out to his family asking for his whereabouts.  Paremuzyan relies entirely on his testimony that his friend once mentioned over a decade ago that the General's henchmen were looking for him.  The Board's decision to disbelieve this uncorroborated hearsay testimony was within its discretion.  And even assuming for argument's sake that Paremuzyan's captors worked for General Grigoryan at some point, it is undisputed that the General was ousted after his arrest in June 2018 and died in November 2020.  The Board's conclusion that Paremuzyan is ineligible for relief under the Convention Against Torture is therefore "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008) (quotation omitted).

★    ★    ★

We **DENY** the petition for review.